UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

v.  Appeal No.  23-4513
   Criminal No.  1:23CR21

**DORIAN MYLES,**

        **Defendant.**

## UNITED STATES' RESPONSE TO DEFENDANT'S APPEAL OF DETENTION ORDER

Now comes the United States of America and William Ihlenfeld, United States Attorney for the Northern District of West Virginia, by Zelda E. Wesley, Assistant United States Attorney for district, and in opposition to Defendant's motion for release pursuant to 18 U.S.C. 3145(c), asserts the follows:

### STATEMENT OF RELEVANT FACTS AND BACKGROUND

On May 2, 2023, Defendant was charged with three additional individuals with various drug related offenses. Defendant was charged with conspiracy to distribute narcotics (Count One), distribution of fentanyl (Counts Five and Six), aiding and abetting the distribution of fentanyl (Count Seven), aiding and abetting the distribution of methamphetamine (Count Nine), and possession with intent to distribute methamphetamine (Count Ten).

On June 29, 2023, Defendant was arrested in the Eastern District of Michigan on the warrant issued in the Northern District of West Virginia. Defendant's detention hearing was conducted before a magistrate judge in the Eastern District of Michigan. The magistrate judge released Defendant, and the government sought review of the release order pursuant to 18 U.S.C. 3145(a)(1).

On July 25, 2023, the district court conducted the hearing to review Defendant's release order pursuant to the government's motion for review. APP83. The district court advised the parties it had access to the recordings from Defendants detention hearing conducted in the Eastern District of Michigan and had reviewed that evidence. App86.

At the detention hearing, the government presented the testimony of DEA Task Force Officer (TFO) Mark Trump, who, along with other task force officers, were investigating Defendant as a member of a drug trafficking conspiracy. APP87. DEA TFO Trump testified that law enforcement identified an apartment located in the Bon Vista Apartments complex in Morgantown, West Virginia, that was utilized by members of the conspiracy. APP87. Law Enforcement was provided information about that residence and information about members of the drug conspiracy by confidential sources. Law enforcement officers developed a confidential informant who was able to make undercover and recorded controlled drug purchases from Defendant as well as other members of the conspiracy. APP87-88.

On November 30, 2022, law enforcement obtained a recorded and undercover purchase of approximately 12 grams of fentanyl from Defendant. App88. Prior to Defendant's distribution of fentanyl to the confidential informant, Defendant advised the confidential informant that the purchase price for the fentanyl would vary depending upon the potency. APP88. Defendant was selling different grades of fentanyl, and he sold the stronger, more deadly fentanyl at an additional cost than the less pure fentanyl. APP88.

In early December 2022, law enforcement officers obtained another undercover purchase of fentanyl from Defendant. During the second recorded undercover purchase from Defendant, he distributed approximately 31 grams of fentanyl to the confidential informant. APP88-89.

As the investigation continued, law enforcement learned that Defendant and his conspirators utilized two residences to facilitate their drug trafficking activities. The conspirators not only utilized the apartment at Bon Vista, but a second residence located at 1028 River Road. The River Road residence was rented by Nolan Eickleberry, a drug runner in the conspiracy. APP89-90.

On January 19, 2023, law enforcement officers obtained an undercover and recorded controlled drug purchase of methamphetamine from Defendant. APP89. Following Defendant's distribution of methamphetamine, officers conducting surveillance observed Defendant enter the residence on River Road. APP90. Law enforcement in West Virginia were advised by a violent crimes investigative group in Detroit that they wanted to interview Dorian Myles about a drive-by homicide of a young child. APP93-94. In an effort to assist law enforcement in Detroit, investigators in West Virginia agreed to culminate their investigation with a search warrant at the River Road residence. APP94. Officers then obtained a search warrant for the residence on River Road. APP91.

As law enforcement approached the front door of the residence, Defendant and Nolan Eickleberry fled out of the back door. APP92. Law enforcement had a perimeter team on the back side of the residence that prevented them from escaping. APP92. Inside the residence, officers observed a sophisticated camera system containing four or five cameras that depicted the perimeter of the residence. APP91-92. The camera system provided Defendant notice of law enforcement approaching and he responded by attempting to flee. APP91-92.

The officers executing the search warrant seized more than a kilogram of methamphetamine, the buy money used by officers to make the undercover drug purchase, and several phones from the residence. APP92-93. Law enforcement was able to extract the data from

codefendant Shakur Jones' phone which contained communications between Jones and Defendant discussing traveling to West Virginia with drugs, and a photograph of approximately 10 pounds of methamphetamine that Defendant had sent to a confidential informant in West Virginia. App93.

Pretrial Services in the Northern District of West Virginia prepared a bond report documenting Defendant's prior arrests and convictions. The bond report noted that Defendant had an arrest or conviction for loitering on public/private property and trespassing and he failed to appear for his court appearance. APP105.

The bond report noted Defendant had a stolen property, receiving and concealing arrest and he failed to appear for court, which resulted in a warrant being issued. App105. Defendant was arrested, arraigned, and then failed to appear again for that offense which resulted in the issuance of another warrant. APP105.

A warrant for Defendant's arrest was issued after he failed to appear for violating the city's marijuana code. APP105.

A warrant was issued for Defendant's arrest as he failed to appear for court to address a no operator's license on a person charge. APP105.

A warrant was issued for Defendant's arrest for failing to appear to address a driving while license suspended charge. APP105-106. Additionally, Defendant failed to appear for a drive while license suspended, and drive unregistered on untitled vehicle offense. APP106.

The bond report also reflected that Defendant has two firearm convictions. Defendant has a 2017 conviction for felony weapons, carrying concealed for which he was sentenced to 18 months of probation, and a 2020 conviction for carrying a concealed weapon. APP126.

Defendant's mother, Takeysha Daniels, testified Defendant resides with her in Detroit. APP118. Ms. Daniels further testified that Defendant could reside with her if he was release and she would ensure that Defendant attended his court hearings. APP120-121.

Ms. Daniels testified that she could not control everything that Defendant did, that he made his own decisions, that she had no knowledge that Defendant was traveling to West Virginia, and that Defendant was actually innocent of his two firearms convictions. APP124-126.

The district court, following the presentment of the evidence and the arguments by counsel, granted the government's motion and ordered Defendant detained. APP142. The district court reasoned that family support is only one factor to consider, and the court must also consider the remainder of Defendant's personal history and characteristics. APP142. The district court stated it takes Defendant's failure to appear quite seriously as well as his two firearms offense. APP142. The district court noted that Defendant had multiple failures to appear despite Ms. Daniels' efforts. APP143.

The court further stated that it had to consider the weight of the evidence and Defendant charges are significant. APP143. The court noted that the evidence included two video/audio controlled buys of 43 grams of fentanyl. APP143. The court went on to say that 43 grams of fentanyl was enough to kill 21,500 people. APP143. The court emphasized that the 1000 grams of methamphetamine seized, the fentanyl, the video controlled buys, and the sophisticated surveillance equipment was significant when considering the weight of the evidence. APP143.

The district court ultimately concluded after weighing the 3142(g) factors, that detention was appropriate on both grounds as Defendant was a danger to the community and a flight risk. APP144. Specifically, the court stated it would grant the Government's motion "given the danger posed by the conduct in this case coupled with Mr. Myles criminal history." APP144. The court

also found defendant to be a flight risk based upon "his history of failing to appear for court-ordered appearances coupled with, in this case, the sophisticated surveillance equipment installed at the stash house," and his efforts to flee when law enforcement executed the search warrant. App. 144.

On July 26, 2023, the district court entered a written order stating it had conducted *de novo* review of defendant's release order and found that the 18 U.S.C. section 3142(g) factors weigh in favor of detention, that Defendant had not rebutted the presumption in favor of detention under 18 U.S.C. section 3142(e)(3) based upon the nature of his offenses, and that the government had met its burden by a preponderance of the evidence that no condition or combination of condition of release would reasonably assure Defendant's presence or the safety of any person and the community by clear and convincing evidence. APP147-148.

## **STANDARD OF REVIEW**

Although the district court's review of a magistrate's detention order is *de novo*, the court of appeals review of the final detention order of the district court is under the clearly erroneous standard. *United States v. Clark*, 865 F.2d 1433, 1437 (4th Cir. 1989); see also *United States v. Abuhamra*, 389 F.3d 309, 317 (2nd Cir. 2004) (applying a clear error standard to review the district judge's detention order and noting that "this clear error standard applies not only to the court's specific predicate factual findings but also to its overall assessment, based on those predicate facts, as to the risk of flight or danger presented by defendant's release).".

When considering the defendant's interlocutory appeal of the district court's detention order, this court must consider "whether the evidence as a whole supports the conclusions of the proceeding below," and must afford "deference to the determination of the district court." *United States v. Stewart*, 19 Fed. Appx. 46, 48 (4th Cir. 2001).

## ARGUMENT

The Bail Reform Act, 18 U.S.C. Section 3141 *et seq.* authorizes a district court to conduct a *de novo* review of a magistrate judge's release order following a motion by the government. *United States v. Rueben*, 974 F.2d 580, 585-86 (5th Cir. 1992); *United States v. Stewart*, 19 Fed. Appx. 46, 48 (4th Cir. 2001).

The factors the district court should consider in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community includes:

(1) The nature and circumstances of the offense charged;

(2) The weight of the evidence against the person;

(3) The history and characteristics of the person which includes-in part-

 (A) A person's character, family ties, employment, community ties, past conduct, history relating the drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. section 3142(g).

In the instant case, the district court conducted the required detention hearing to determine if there were any condition or combination of conditions to assure defendant's appearance and safety to the community pursuant to 18 U.S.C. section 3142(f).

At defendant's detention hearing, the district court clearly weighed the 3142(g) factors in concluding there were no conditions or combination of conditions to reasonably assure Defendant's appearance or the safety of the community. The district made explicit findings that

Defendant was charged with distributing fentanyl in quantities that could have resulted in the deaths of more than 20,000 individuals. APP143.

The court further concluded that Defendant's flight when law enforcement executed the search warrant, the sophisticated camera system which provided Defendants notice to flee if law enforcement approached, and his numerous failures to appear for prior court appearances outweighed his family and community ties to conclude he is a flight risk. APP143-144. More specifically, the court stated that Defendant's family ties did not prevent him from failing to appear for court appearances in the past. APP142. The district court correctly pointed out to Defendant that family ties is not the only consideration under 3142(g), and when the factors were considered as a whole, the weight of the other factors supports Defendant's detention. APP142-143.

Defendant incorrectly argues that the district court employed the wrong standard and further incorrectly asserts that this court should review the district court's factual conclusions *de novo*. As previously addressed in the standard of review, the district court's review is de novo, and the court of appeals' review is clearly erroneous regarding the district courts factual conclusions.

Defendant also erroneously relied upon U*nited States v. Gill*, 2021 WL 7569818, and incorrectly asserts to this court that Gill was reversed and remanded because the district court erroneously concluded the presumption was not rebutted. (Defendant's brief, page 50). However, in Gill, this court stated "upon review of memoranda relative to this appeal, the court reverses the district court's order of detention and remands" without any further explanation.[1]

## **CONCLUSION**

The District Court, after consideration of all of the evidence presented, arguments of the parties, and the 3142(g) factors, concluded that there were no conditions or combinations of

---

[1] Approximately three weeks prior to this court's final decision in Gill, a decision upholding the district court's decision to detain was entered by this court. *United States v. Gil*l, 2021 WL 4267522

conditions to reasonably assure Defendant's appearances or the safety to the community. The district court's conclusions that Defendant is a danger to the community and a flight risk is overwhelmingly supported by record, and Defendant's motion for release should be denied without a hearing.

          Respectfully submitted,

          WILLIAM IHLENFELD
          UNITED STATES ATTORNEY

By:   /s/ Zelda E. Wesley
      Assistant United States Attorney
      United States Attorney's Office
      320 West Pike Street, Suite 300
      Clarksburg, WV  26301
      Ph: (304) 623-7030; Fax: (304) 623-7031
      zelda.wesley@usdoj.gov

CERTIFICATE OF SERVICE

I, Zelda E. Wesley, Assistant United States Attorney for the Northern District of West Virginia, hereby certify that on August 31, 2023, I electronically filed the foregoing UNITED STATES'RESPONSE TO DEFENDANT'S APPEAL OF DETENTION ORDER, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all participants registered in CM/ECF in the above-referenced matter.

          Respectfully submitted,
          WILLIAM IHLENFELD
          UNITED STATES ATTORNEY

By:   /s/ Zelda E. Wesley
       Assistant United States Attorney